<u>AFFIDAVIT IN SUPPORT OF APPLICATION</u>

I, Jane Cuddy, being first duly sworn, hereby depose and state as follows:

<u>Introduction and Agent Background</u>

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2.      I have been employed by the Drug Enforcement Administration ("DEA") since January of 2021.  I am currently assigned to the New England Field Division, Task Force 5, as a Special Agent, where I investigate drug trafficking and money laundering organizations and their ties to violent crime.  In May of 2021 I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia, where I received specialized training in narcotics and money laundering investigations and related legal matters.  In 2010, I received a Bachelor of Arts degree in Crime and Justice Studies from the University of Massachusetts, Dartmouth.  In 2020, I received a master's degree in public policy from the University of Massachusetts, Dartmouth.

3.      I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations.  I have also reviewed recorded conversations and telephone, financial, and drug records.

4.      Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities.  I am familiar with the manner in which drug traffickers (1) use telephones; (2) use electronic text messages in lieu of or in addition to telephone calls; (3) employ coded, veiled, or slang-filled telephone

conversations; and (4) utilize other means to facilitate, disguise, and conceal their illegal activities. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance.

5.       Through my training and experience, I have also become familiar with the manner in which illegal drugs are imported, transported, mailed, stored, and distributed, and the methods of payment for such drugs.

6.       I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other DEA agents, Task Force Officers, and local police departments. This affidavit is intended to demonstrate that there is probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## Purpose of the Affidavit

7.       I submit this affidavit in support of a criminal complaint against Jason Monteiro (MONTEIRO) charging that on or about October 22, 2024 MONTEIRO possessed with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (the "Target Offense").

8.       Since this Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish the foundation for issuance of the proposed complaint.

## Previous Warrants

9.       On October 10, 2024, the Honorable Jennifer C. Boal, United States Magistrate Judge, District of Massachusetts, issued a search warrant authorizing the collection of both

historical and prospective location information for the cellular telephone assigned telephone number (774) 524-1371 (Target Telephone 1). (See 24-MJ-7392).

Probable Cause

10.     In June 2024, I met with a known Confidential Source (the "CS").[1]  During the meeting, the CS identified MONTEIRO as a supplier of multiple kilograms of cocaine operating in the area of New Bedford, Massachusetts.  The CS further stated that MONTEIRO purchased 30-40 kilograms of cocaine at a time from a supplier based in Connecticut.  The CS stated that the kilograms of cocaine supplied by MONTEIRO are typically packaged in small, brown boxes.  The CS stated that after obtaining each large shipment of cocaine, MONTEIRO quickly sells the product, then "lays low" until the next transaction.  The CS stated that he believed that MONTEIRO likely maintains a "stash" location in the North End of New Bedford.

*The September 30, 2024 Recordings*

11.     On September 30, 2024, acting at the direction of agents, the CS contacted MONTEIRO with the purpose of orchestrating a controlled purchase of kilograms of cocaine.  Thereafter, the CS provided agents with two audio recordings of FaceTime calls made by MONTEIRO via Target Telephone 1 on September 30, 2024.  The quality of the recordings are

---

[1] The CS became a documented DEA source during the summer of 2024.  The CS began cooperating in the hopes of receiving favorable charging and sentencing decisions on state and federal drug trafficking charges. As described herein, statements made by the CS have been corroborated by recorded calls and observations of investigators.  As such, I believe that the CS is a reliable source.  I note that on October 22, 2024, following the stop and search of MONTEIRO described herein, the CS informed investigators that he (the CS) was in custody at the New Bedford Police Department on drug related charges.  Following the call, I confirmed with Massachusetts State Police investigators that today (October 24, 2024) the Defendant was detained by the New Bedford Police regarding the possession of approximately 200 grams of cocaine.  The CS was subsequently released pending further investigation by the New Bedford Police.  The DEA intends to deactivate the CS regardless of whether the New Bedford Police bring charges.

poor; however, during one of the recordings, the CS and MONTEIRO spoke about a mutual acquaintance living in the area of Cape Cod, Massachusetts.  The CS told MONTEIRO, "So, let me know because I think dude from the Cape is going to be looking for a few."  I know from my training and experience, and from conversation with the CS, that by "So, let me know," the CS was asking MONTEIRO to keep him (the CS) informed as to whether MONTEIRO could supply cocaine.  I know further that by "looking for a few," the CS meant that the mutual acquaintance was interested in purchasing several kilograms of cocaine.  Some of MONTEIRO's answers were unintelligible, however, MONTEIRO answered, "Yeah …[UI] I'm in the shop."

12.     During the second recording that was made the same day, the CS asked MONTEIRO, "Are you going to have some solids…I need a couple of solids."  I know from my training and experience, and from conversation with the CS, that by "solids," the CS meant that he (the CS) wanted solid bricks of cocaine instead of poor-quality cocaine that falls apart when the kilogram brick is unwrapped.  In response, MONTEIRO stated, "Yeah…Imma check it …but I'm not gonna  open it."  Thereafter, the call ended.

Connecticut License Plate Readers

13.     The Massachusetts Registry of Motor Vehicles database indicates that MONTEIRO's mother is the registered operator of a Jeep Grand Cherokee bearing Massachusetts plate number 19MX53 (the "Grand Cherokee").  A check of records for law enforcement License Plate Readers operating in the state of Connecticut indicates that on August 12, 2024, at approximately 5:49 p.m. an image of the Grand Cherokee was captured while traveling southbound on Coogan Boulevard near the Mystic Village line in Stonington, Connecticut.  On the same date, at approximately 7:33 p.m., an image of the Grand Cherokee was captured while traveling in the

direction of MONTEIRO's home in New Bedford, Massachusetts, on I-195 in Seekonk, Massachusetts.

14.     During the September 30, 2024 debriefing, the CS stated that in a previous, unrecorded conversation on August 15, 2024, MONTEIRO stated that he (MONTEIRO) had "re-upped" but that he did not get as much as usual due to a price increase.  I know from my training and experience, and from conversation with the CS, that by "re-upped" MONTEIRO meant that he had replenished his supply of cocaine.

*Subsequent Calls*

15.     On the evening of October 8, 2024, the CS recorded another call with MONTEIRO. During the call, MONTEIRO told the CS, "I ended up talking to my man…He said right now, …um, if you got 10, he said, like…he could drop…to like 17 and a half."  I know from my training and experience, and from conversation with the CS, that by "talking to my man," MONTEIRO meant that he (MONTEIRO) had spoken with his cocaine supplier.  I know further that by, "[I]f you got 10, he said, like …he could drop…to like 17 and a half," MONTEIRO was telling the CS that if he (the CS) would purchase 10 kilograms of cocaine, his supplier would lower his price to $17,500 per kilogram.

16.     During an unrecorded conversation on October 17, 2024, acting at the direction of agents, the CS told MONTEIRO that he (the CS) was interested in purchasing at least  the 10 kilograms of cocaine.  The CS stated that during the same conversation he (the CS) asked MONTEIRO to obtain an additional 4 kilograms of cocaine for the mutual acquaintance from Cape Cod.

*MONTEIRO Borrows the CS Vehicle*

17.     The CS informed investigators that during an unrecorded conversation on Thursday, October 18, 2024, MONTEIRO told the CS that he (MONTEIRO) would soon obtain multiple kilograms of cocaine from his source in Connecticut.  The CS told investigators that during the conversation MONTEIRO stated that once the source of supply was ready, the CS should join MONTEIRO for the ride to Connecticut to obtain the drugs.  When the CS declined the invitation, MONTEIRO asked the CS if he (MONTEIRO) could borrow the CS vehicle to make the trip.  The CS agreed.

18.     Following the conversation with MONTEIRO on October 18, 2024, the CS signed a DEA consent form permitting investigators to install a GPS tracker device on the CS vehicle. Thereafter, investigators installed the GPS tracker device on the CS vehicle.

19.     On Monday, October 21, 2024, the CS informed investigators that MONTEIRO had taken custody of the CS vehicle.  The CS told investigators that MONTEIRO stated that he would be ready by Wednesday.  Based upon my training and experience, and from conversation with the CS, I know that by stating the CS would be ready by Wednesday, MONTEIRO was informing the CS that he (MONTEIRO) would obtain the kilograms of cocaine from his supplier in Connecticut by Wednesday, October 23, 2024.

*October 22, 2024*

20.     On the afternoon of Tuesday October 22, 2024, GPS location information for Target Telephone 1 obtained via court order, and from the GPS tracker installed on the CS vehicle, indicated that the CS vehicle was in fact headed south from New Bedford toward Connecticut. Thereafter, investigators stationed in Connecticut located the CS vehicle stopped in a parking lot adjacent to the "Rio Salado" restaurant located at 8 Coogan Boulevard in Mystic, Connecticut.

21.     The CS vehicle was parked next to a Jeep Wrangler with Maryland Plates (the "Jeep Wrangler").   Investigators observed MONTEIRO sitting in the driver's seat of the CS vehicle accompanied by an unidentified male (UI-1) seated in the passenger's seat of the CS vehicle.   At the same time, investigators observed a second unidentified male (UI 2) closing the rear hatch of the Jeep Wrangler.   The CS vehicle and Jeep Wrangler remained stationary in the parking lot for several minutes.   Eventually, investigators observed MONTEIRO operating the  CS vehicle alone, driving in the direction of Interstate I-95 North.   Using location data, and in person surveillance, investigators followed MONTEIRO from Connecticut to Massachusetts.

22.     Based upon my training and experience, conversation with the CS, location information, observations of investigators conducting surveillance, as well as MONTEIRO's immediate return to Massachusetts from Connecticut, I believed that probable cause existed to believe  that  MONTEIRO  was  transporting  kilograms  of  cocaine  from  Connecticut  to Massachusetts.   Thereafter, I informed a Massachusetts State Trooper that I believed there was probable cause to stop the CS vehicle.   At approximately 5:25 p.m., the Massachusetts State Police pulled the CS vehicle over near the mile 3 marker, eastbound on Interstate I-195 near Seekonk, Massachusetts.

23.     After pulling over the CS vehicle, MONTEIRO was removed from the CS vehicle. Investigators then observed two brown boxes matching the description previously provided by the CS on the backseat of the CS vehicle.   The boxes were removed from the vehicle and opened. Inside, investigators recovered four bricks, wrapped in plastic and grey duct tape, weighing approximately one kilogram each, and containing compressed, white powder.   Based upon my training and experience, the packaging, color, weight, and consistency of the four bricks are

consistent with kilograms of cocaine. A subsequent preliminary test confirmed that one of the bricks contains cocaine.

Conclusion

24.    Based on the facts described above, I submit that probable cause exists to believe that on or about October 22, 2024, MONTEIRO possessed with intent to distribute a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). As such, I request that the Court issue the proposed complaint.

I declare that the foregoing is true and correct.

_Jane Cuddy_
JANE CUDDY, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 this 23 day of October 2024.

HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

